Argued October 29, affirmed December 7, 1915.

## HEGDALE v. WADE.

(153 Pac. 107.)

**Vendor and Purchaser—Dealing at Arm's-length.**

1. Where the buyer of farm lands represented to the sellers that he was an experienced farmer, owned a valuable farm in another state, and knew good land when he saw it, the parties dealt at arm's-length, and the contract could not be rescinded for misstatements of the sellers as to the quality of the soil.

[As to buyer's risk, see note in **75 Am. St. Rep. 77.**]

From Malheur: DALTON BIGGS, Judge.

In Banc. Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by Andrew J. Hegdale against Albert E. Wade and Augustus G. Kingman, to rescind a contract for the purchase of land, to set aside a note and mortgage, and to recover sums of money paid on account of the purchase of the realty and expended in its improvement. The complaint charges, in effect, that the defendants fraudulently represented to the plaintiff that all of lots 2, 3, 4 and 5 in section 31, township 20 south, range 47 east of Willamette Meridian, in Malheur County, Oregon, was good agricultural land, free from alkali, and, with irrigation, would produce good crops and such as were raised in that vicinity; that the realty so described contained alkali, would not produce crops by irrigation, and was valueless for agricultural purposes, as was well known by the defendants, who made such representations to deceive the plaintiff and to induce him to purchase the land at a price greatly in excess of the real value; that for many years prior to such purchase, the plaintiff had been engaged in fishing, and had no knowledge of farming or of the value of lands for agricultural purposes, which facts were well known to the defendants

when they made such representations and then told him they were responsible for their statements, upon which he could rely, all of which fraudulent narrations were made to induce him not to inquire of others as to the value of such land or as to its capability to produce crops by irrigation; and that, relying upon such representations, the plaintiff was deceived to his damage, specifically setting forth the extent of his alleged losses.

The answer denies most of the averments of the complaint, and for a further defense alleges, in substance, that prior to such purchase the plaintiff represented to the defendants that he was an experienced farmer, owned a valuable farm in the State of Washington, and knew good land when he saw it; that before buying the realty described the plaintiff made full investigation thereof, and inquired of farmers in that vicinity their opinions in respect to the premises; that the only representations ever made to the plaintiff were that the land had never been planted to crops, and its fertility and productivity were unknown; that such realty is good agricultural land, adapted to the growing of crops usually raised in that vicinity; that the plaintiff was negligent in seeding and irrigating the premises; that he did not sow sufficient thereof to demonstrate its worth for agricultural purposes; and that no part of the land so planted by him was irrigated.

The reply put in issue the allegation of new matter in the answer, and, the cause being tried, the suit was dismissed and plaintiff appeals.          AFFIRMED.

For appellant there was a brief over the names of *Mr. A. E. Cross* and *Mr. C. C. Wilson,* with an oral argument by *Mr. Cross.*

For respondents there was a brief over the names of *Mr. P. J. Phillips* and *Mr. Robert M. Duncan,* with an oral argument by *Mr. Phillips.*

Opinion by MR. CHIEF JUSTICE MOORE.

The transcript of testimony shows that prior to July 1, 1913, the plaintiff, Andrew J. Hegdale, had for several years been engaged in fishing in the Columbia River and at Grays Harbor, Washington, in which state he had made a homestead entry on public land that was covered with timber, which premises he had partially cleared and improved. Intending to purchase other real property, he went to Ontario, Oregon, about the time stated and, crossing the Snake River, he examined lands in Idaho known as the Payette Valley and the Roswell Bench, which sections are noted for their fertility. Returning to Malheur County, Oregon, he inspected an 80-acre tract, and paid Ed. Blodgett, a land agent, $10 for an option to purchase the real property. The following day he crossed another piece of land in that country bordering on such river, which premises the defendant Albert E. Wade was leveling to prepare for irrigation and cultivation. Hegdale and Wade, taking a skiff, rowed up that stream, thus having an opportunity to determine the depth of soil along the bank of the land hereinbefore described. The plaintiff, being pleased with the location of the premises, refused to accept a conveyance of the land on account of which he had made the payment. Thereafter he agreed with Wade to purchase the lands so bordering on the river, containing 63.4 acres, according to government survey, stipulating to pay for the realty and for 64 shares of stock in the Kingman Colony Irrigation Company $3,700, accepting a deed of the premises subject to a mortgage

of $1,600, and interest, given to secure the purchase of the irrigation stock, which encumbrance the plaintiff was to assume and discharge. He was to pay Wade $1,200 when the deed was delivered, and also to execute to him a promissory note for $900, and secure the payment of that sum by a mortgage of the premises to evidence the remainder of the purchase price. The defendant Augustus G. Kingman being a tenant in common with Wade, they and their wives on July 9, 1913, executed a general warranty deed of the lots so described to Hegdale, who thereupon paid the $1,200, and also executed the note and mortgage for $900. An abstract of the title to the realty revealed a judgment that had been rendered against Wade for more than $900 which was then a lien upon the land, whereupon the note and mortgage that had been delivered were returned to Hegdale, to be retained by him until the judgment lien was discharged. Immediately after securing a transfer of the title, the plaintiff took possession of the premises and continued leveling the land for irrigation and making other improvements upon the premises. Without securing a satisfaction of the judgment Wade commenced an action against Hegdale to recover possession of the $900 note and mortgage but such action was dismissed. Thereafter the judgment lien was discharged and Wade commenced a suit to foreclose such mortgage, whereupon this suit was instituted.

The evidence shows that, with the exception of a strip averaging about 200 feet in width along the bank of the Snake River, the land in question is practically valueless for agricultural purposes. A ridge along that stream renders the back part of the land lower than the front. Before the premises were cleared the ridge bore sagebrush, while the back part of the land

produced greasewood. The soil upon which the latter shrubs grew is in the nature of blue clay, and, when irrigated, the water, instead of penetrating the ground, remains in puddles in the low places, where, evaporating, the surface remains very hard. The back part of the land contains alkali, which, being liberated by irrigation, remains a white substance when the water disappears. Several experts who were well acquainted with such conditions of soil expressed opinion that the greater part of the land of plaintiff could be rendered fit for agriculture by thorough draining and leveling and by mixing sand with the clay, thus entailing a great outlay of money and labor. An experienced irrigator was employed who turned water from ditches upon the plaintiff's land, causing the seed that was sowed thereon to germinate, but, the surface of the ground becoming hard after the water disappeared in vapor, the crops entirely failed.

The testimony tends to show that the plaintiff's horses strayed, and he spent much time in looking for them when his land needed attention, and that by reason of his absence stock came upon his premises and injured the growing crops. A careful examination of the entire testimony leads to the conclusion that the greater part of the land in its present condition is practically worthless for agricultural purposes, and that the cost of making such part of the realty productive is prohibitive. The plaintiff, though owning in Western Washington a homestead covered with timber, does not appear to have had any knowledge of the arid country of Eastern Oregon until going to that section about July 1, 1913, and eight days thereafter securing a deed to the land mentioned.

Hegdale testified that Wade took him to the bank of the river and called particular attention to the depth

of soil at that place, saying that the quality of the entire tract was just as good as the lands on the Roswell Bench or in the Payette Valley, in Idaho, which sections the witness had visited, that the premises particularly described would grow everything that could be raised in that vicinity, and recommended the kind of fruit trees which should be set out. The plaintiff offered testimony tending to substantiate each material averment of the complaint. The defendant Wade, with whom the contract to purchase the land was made, specifically denied each alleged representation so imputed to him by the plaintiff respecting the quality of the realty or its value for agricultural purposes, saying, in effect, that the plaintiff carefully viewed the entire premises, judged for himself, without any statements by the witness upon the subject, the adaptability of the land for the successful raising of crops, and that Hegdale also stated to the witness that he knew the character and value of all land in that section of the country when he saw the premises, and, referring to the 80 acres on account of which he had deposited $10 as part consideration for the purchase thereof, said it was gravelly and produced salt grass. Wade further testified in support of each averment of new matter in the answer. The fact that Hegdale abandoned that tract of land after negotiating for its purchase tends to prove that he thought, at least, he knew something about the quality of the soil in that vicinity, and to confirm Wade's sworn statements in these particulars. It is impossible by any means to reconcile the contradictory testimony given by these witnesses. A careful examination of their sworn statements, when read in connection with the testimony of all other witnesses, leads us to believe that the trial court reached a proper conclusion upon the merits of the case, and

that the rule announced in *Black* v. *Irvin*, 76 Or. 561 (149 Pac. 540), where the plaintiff said, in referring to the subject matter of the suit, "I am familiar with the restaurant business, and there is nobody can hand me anything on a restaurant or hotel deal * * because I have had a lifetime at the business," is controlling herein.

It follows that the decree should be affirmed; and it is so ordered.                              AFFIRMED.